**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-01970-CMA-NYW

MICHAEL MCCORMACK,

     Plaintiff,

v.

VINCENT TALTY,

     Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

     This action is before the court on Plaintiff Michael McCormack's ("Mr. McCormack" or "Plaintiff") Motion to Amend Complaint ("Motion to Amend" or "Motion"), [Doc. 68, filed February 4, 2022]. The court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated September 9, 2020, [Doc. 13], and the Memorandum dated February 4, 2022, [Doc. 69]. This court concludes that oral argument would not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and associated briefing, the applicable law, and entire case file, I respectfully **RECOMMEND** that the Motion to Amend be **DENIED**.

**BACKGROUND**

**I.     Factual Background[1]**

     This case arises out Mr. McCormack's arrest on July 4, 2018. *See* [Doc. 11]. That day, Mr. McCormack alleges that he was out with his girlfriend on a public parkway when

---

[1] The court draws these facts from the operative First Amended Complaint, [Doc. 11].

he was approached by a "'railroad' police officer who accused them of trespassing." [*Id.* at ¶¶ 2, 15–18]. The officer radioed the Denver Police Department ("DPD") for backup, and two DPD officers, including Defendant Vincent Talty ("Mr. Talty" or "Defendant"), arrived on the scene shortly thereafter. [*Id.* at ¶ 19]. Mr. McCormack alleges Defendant Talty "grabbed Plaintiff by his right arm while the railroad officer grabbed his left arm and both arms were placed behind Plaintiff's back." [*Id.* at ¶ 22]. Although Plaintiff complied with Defendant's requests, Defendant "pulled Plaintiff's right arm backward and jerked it up, behind his back, in a twist, for the purpose of causing him pain." [*Id.* at ¶¶ 24–26]. When Plaintiff complained about the pain, Defendant "twisted and wrenched on Plaintiff's right hand/arm, while it was behind Plaintiff's back," as Plaintiff continued to protest Mr. Talty's conduct. [*Id.* at ¶ 28]. During this time, Mr. McCormack heard "a loud pop, which was the sound of a bone breaking and/or a ligament tearing in Plaintiff's right wrist." [*Id.* at ¶ 29]. Thereafter, Defendant placed Mr. McCormack under arrest. [*Id.* at ¶ 32].

After Mr. McCormack was booked in the Denver County jail, he sought medical attention for his wrist, and the first nurse who treated him, on July 8, 2018, "observed and documented a hard lump, swelling, scratches, and limited/lack of motion in Plaintiff's wrist." [*Id.* at ¶¶ 33–37]. Plaintiff sought medical attention again on July 25, 2018, "because he had not [received] treatment and his wrist was still swollen and painful." [*Id.* at ¶ 38]. Plaintiff's wrist pain continued thereafter, despite visits with other medical providers at the facility, and he ultimately learned that he had a broken wrist. *See* [*id.* at ¶¶ 39–42]. However, notwithstanding the purported knowledge of various medical providers "for months that Plaintiff's wrist was broken and that he needed further treatment, including an MRI, surgery, and referral to an orthopedist, Plaintiff was never

transported to an outside specialist who could evaluate and treat his wrist injury while he was in Denver County jail." [*Id.* at ¶ 52]; *see also* [*id.* at ¶¶ 43–51]. Plaintiff's wrist injury "went undiagnosed for six months" and continued to cause him pain, with the bone ultimately healing "in a malformed position." [*Id.* at ¶ 54]; *see also* [*id.* at ¶ 56]. Mr. McCormack alleges he continues to "suffer[ ] from difficulty using his prominent hand due to pain and  a lack of strength in his wrist, particularly when grabbing, holding items, or engaging in twisting motions." [*Id.* at ¶ 58].

In the First Amended Complaint, Mr. McCormack asserts two claims for relief pursuant to 42 U.S.C. § 1983: (1) violation of the Fourth Amendment for excessive force against Defendant Talty; and (2) violation of the Eighth and Fourteenth Amendments for deliberate indifference to his serious medical needs, against three other Defendants (i.e., the medical providers) who have since been dismissed from this action. *See* [*id.* at ¶¶ 61–78]. In support of his First Claim against Defendant Talty, Plaintiff alleges that Defendant

> intentionally and knowingly, applied unnecessary, unreasonable, and excessive force to Plaintiff by maliciously jerking his arm back, up and then twisting it behind Plaintiff's back until a bone in his right wrist broke, a ligament tore, and a tendon was damaged – at a time when Plaintiff was compliant with his hands behind his back, not resisting arrest, and was not presenting any threat to officers.

[*Id.* at ¶ 62].

## II.   Procedural Background

Plaintiff initiated this action on July 6, 2020, by filing a Complaint and Jury Demand ("Complaint"), wherein he asserted claims against Defendants Alain Habimana, Christian Stob, C. Fry, and M. Bard. *See* [Doc. 1]. On September 8, 2020, Plaintiff filed an Amended Complaint and Jury Demand ("First Amended Complaint") as a matter of course

pursuant to Federal Rule of Civil Procedure 15(a)(1).  [Doc. 11; Doc. 12].  The First Amended Complaint corrected the names of Defendants Fry and Bard to include their full names, and replaced Defendant Habimana with Defendant Talty.  *See* [Doc. 12-1].  On October 12, 2020, Plaintiff voluntarily dismissed Defendants Stob, Fry, and Bard, thus proceeding only on his claim against Defendant Talty.  [Doc. 18; Doc. 19].

The court conducted a Scheduling Conference on October 20, 2020, where it set the deadline for the joinder of parties and amendment of pleadings for November 7, 2020; and the discovery deadline for June 21, 2021.  [Doc. 22 at 6].  The court also set the Final Pretrial Conference for September 15, 2021.  [*Id.* at 8].  Defendant Talty filed his Answer to the First Amended Complaint on November 9, 2020.  [Doc. 26].

On April 19, 2021, Plaintiff filed an Unopposed Motion to Modify Scheduling Order ("Motion to Modify"), seeking to extend all remaining deadlines by sixty days.  [Doc. 37].  The court subsequently granted the Motion to Modify, thus extending the discovery and dispositive motions deadlines to August 20, 2021, and September 17, 2021, respectively, and resetting the Final Pretrial Conference for October 14, 2021.  [Doc. 39].  On June 21, 2021, Defendant filed an Unopposed Motion for Extension of Expert Disclosure Deadlines and Discovery Cut-Off" ("Motion for Extension").  [Doc. 43].  The court granted the Motion for Extension the next day, thus extending the affirmative expert disclosure deadline, the rebuttal expert disclosure deadline and the discovery deadline to August 6, September 3, and September 17, 2021, respectively.  [Doc. 45].

On September 2, 2021, Plaintiff sought another extension of the rebuttal expert disclosure deadline, "to allow sufficient time for medical review and consultation."  *See* [Doc. 47 at ¶ 12].  Plaintiff explained that upon receiving Defendant's medical expert

witness report, Plaintiff "determined that Defendants' expert had relied on information that was not made available to Plaintiff" and, upon conferral with Defendant thereafter, "Defendant[ ] provided additional x-ray and MRI imaging information that Defendant[ ] had obtained, but not disclosed, via medical releases signed by Plaintiff during the discovery process." [*Id.* at ¶¶ 7, 9]. Plaintiff also stated that on August 31, 2021, "Plaintiff's counsel learned that Plaintiff's medical condition may be more complicated than originally anticipated and that his medical expert required more time to review the case." [*Id.* at ¶ 11]. The court granted Plaintiff's request on September 9, 2021, thus extending the rebuttal expert disclosure deadline to October 4, 2021, and the discovery and dispositive motions deadlines to October 18, 2021. [Doc. 49].

On October 1, 2021, the Parties filed a Joint Motion for Settlement Conference ("Motion for Settlement Conference"), [Doc. 52], and a Joint Motion to Stay Proceedings Pending a Settlement Conference ("Motion to Stay"), [Doc. 51]. The court granted the Motion for Settlement Conference, *see* [Doc. 53]; and granted in part and denied in part the Motion to Stay, which vacated the deadlines for rebuttal expert disclosures, discovery, and dispositive motions, and vacated the Final Pretrial Conference that was set for October 14, 2021, *see* [Doc. 55]. On October 13, 2021, the court reset the foregoing deadlines as follows: designation of rebuttal experts due January 21, 2022; discovery and dispositive motions due January 28, 2022; and the Final Pretrial Conference was reset for February 2, 2022. [Doc. 57].

On December 14, 2021, the undersigned conducted a Settlement Conference, but the Parties did not reach a settlement. *See* [Doc. 62]. Following the Settlement Conference, the undersigned ordered the Parties to meet and confer regarding additional

information as to Plaintiff's damages, and exchange additional offers and demands if appropriate, and to submit a status report, by January 4, 2022, to allow the court to determine whether further court-facilitated settlement negotiations were warranted.  [*Id.*]. After the Parties submitted their Joint Status Report, the court ordered the Parties to submit another joint status report regarding their settlement negotiations by January 28, 2022.  [Doc. 65].

On January 18, 2022, the Parties filed a Joint Motion for Extension of Discovery and Related Deadlines, [Doc. 64], wherein they sought extensions of the rebuttal expert, discovery, and dispositive motions deadlines, as well as a continuance of the Final Pretrial Conference.  The Parties explained that "if no settlement is reached by January 28, 2022, *Plaintiff intends to seek leave to amend the Complaint to add complementary theories of relief to the current claims based on new information learned in discovery about the factual circumstances underlying the claims and damages* and expect that some additional discovery related to these theories will be needed."  [Doc. 64 at ¶ 3 (emphasis added)].  The court granted that motion the next day, thus resetting the deadlines as follows: designation of rebuttal experts due February 18, 2022; discovery due March 18, 2022; dispositive motions due April 18, 2022; and the Final Pretrial Conference was reset for April 18, 2022.  [Doc. 67].

On February 4, 2022, Plaintiff filed the instant Motion to Amend.  *See* [Doc. 68]. On February 17, 2022, Defendant filed an Unopposed Motion for Further Extension of Discovery and Related Deadlines, [Doc. 70], which the court subsequently granted, thus establishing the current remaining deadlines in this case, *see* [Doc. 77].  Those deadlines are as follows: Defendants' rebuttal expert disclosures were due April 4, 2022; the

discovery deadline is May 6, 2022; dispositive motions are due May 13, 2022; and the Final Pretrial Conference is reset for June 30, 2022.  [*Id.*].

### III.  Motion to Amend

Plaintiff seeks to "modify his excessive force claim to add factual allegations supporting that Plaintiff suffered injuries resulting from overly tight handcuffs and a concordant theory of relief related to use of excessive force via tight handcuffs."  [Doc. 68 at 6].  Specifically, Plaintiff claims that his treating providers previously identified only "a broken bone, ligament tear, and torn tendon which all appeared to be related to the initial jerking/twisting force identified in" the First Amended Complaint, and Plaintiff therefore "relied on only one theory of relief regarding excessive force and the injuries he suffered." [Doc. 68 at 2].  However, Plaintiff claims that Defendant's expert report revealed additional information "that Plaintiff did not have, which suggested that the wrist injury [he] suffered might be more complicated than originally determined."  [*Id.*].  That is, Defendant's "expert, in conjunction with the Plaintiff's original expert, determined that Plaintiff suffered additional injuries from the overly tight 'hinge' handcuffs that had not previously been recognized/appreciated, including but not limited to a serious 'double crush' nerve injury that will be expected to have long-lasting effects."  [*Id.* at 2–3].

On February 22, 2022, Defendant responded in opposition to the Motion, arguing that Plaintiff's request is unduly delayed, Defendant will be unduly prejudiced, and the "new information" that Plaintiff claims he learned "does not constitute good cause".  [Doc. 74 at 3].  Plaintiff replied on March 8, 2022.  [Doc. 78].  Because this matter is ripe for disposition, I consider the Parties' arguments below.

**STANDARD OF REVIEW**

The purpose of the deadline to amend pleadings, as set out in a Scheduling Order, is to force the parties to prioritize their discovery to obtain the information necessary to know if amendment is required sooner rather than later. This also ensures that discovery proceeds in an orderly fashion.  *See Valles v. Gen-X Echo B, Inc.*, No. 13-cv-00201-RM-KLM, 2013 WL 5832782, *3 (D. Colo. Sept. 27, 2013).   Accordingly, when, as here, a party seeks to amend pleadings after the deadline set in the Scheduling Order, the court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.D. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).   Second, only if the party establishes good cause does the court turn to whether amendment is proper under Rule 15(a) of the Federal Rules of Civil Procedure. *Id*. at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco*, 204 F.R.D. at 668). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000).  The party seeking an extension is normally expected to show at least good faith

on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

By contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).   Courts have described the standard under Rule 15(a) as "more lenient" than that under Rule 16(b).   *Pumpco*, 204 F.R.D. at 668. Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.   *Id.*; *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).   Whether to allow amendment is within the trial court's discretion.   *Burks v. Okla. Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).   The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases.   *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).   A court may deny a motion for leave to amend if a plaintiff "fail[s] to satisfy either factor—(1) good cause or (2) Rule 15(a) . . ."   *Gorsuch,* 771 F.3d at 1241.

## ANALYSIS

First, the court must determine if amendment of the Scheduling Order is appropriate under Rule 16(b).   Mr. McCormack's proposed Second Amended Complaint and Jury Demand ("Second Amended Complaint"), *see* [Doc. 68-2; Doc. 68-3],[2] seeks to add the following substantive factual allegations related to Defendant Talty's handcuffing of Plaintiff in 2018:

---

[2] Plaintiff attaches both a redlined copy and clean copy of the proposed Second Amended Complaint.   *See* [Doc. 68-2; Doc. 68-3].   Because the redlined version clearly identifies the amendments that Plaintiff is seeking in the instant Motion, the court will refer to that version herein for ease of reference.

- "Defendant Talty utilized special fixed/hinged handcuffs he carries instead of or in addition to standard handcuffs because they put the 'tweak tweak' on arrestees (causing them unnecessary pain and discomfort)."  [Doc. 68-2 at ¶ 29]; *see also* [*id.* at ¶ 44 (alleging that "Defendant Talty was aware that the handcuffs were too tight and were likely to cause Plaintiff pain, as the particular handcuffs he chose to utilize were 'hinged' handcuffs that had been banned by the police department, and which Defendant Talty had been trained not to use, but which he sometimes used anyway because, in how [sic] words, they really put the 'tweak tweak' on suspects")].

- "The fixed/hinged handcuffs Talty used were known to be dangerous and had been prohibited by the police department."  [*Id.* at ¶ 30].

- "Defendant Talty purposefully applied these painful handcuffs and applied them in an overly tight manner for the purpose of causing Plaintiff injury, pain, and discomfort."  [*Id.* at ¶ 31].

- "Plaintiff repeatedly complained to Defendant Talty over approximately ten minutes that the handcuffs were too tight and causing him pain and loss of feeling."  [*Id.* at ¶ 32]; *see also* [*id.* at ¶¶ 45–46].

- "Defendant Talty purposefully ignored Plaintiff's complaints and failed to loosen or remove the overly tight handcuffs."  [*Id.* at ¶ 33].

- "After being in the overly tight handcuffs for approximately ten minutes, officers removed Defendant Talty's handcuffs and replaced them with standard handcuffs."  [*Id.* at ¶ 34].

- "The removal process was extraordinarily difficult for officers to complete because the handcuffs were too tight. The officer who removed them acknowledged the over-tightness of the handcuffs by recognizing and saying they were 'super tight.'"  [*Id.* at ¶ 35]; *see also* [*id.* at ¶ 47].

- "X-rays and other imaging show that [Plaintiff] has suffered a broken wrist, a torn ligament, a tendon injury, and 'double crush syndrome' to his wrist."  [*Id.* at ¶ 38]; *see also* [*id.* at ¶ 3].

Further, Plaintiff ultimately seeks to amend his theory of relief as to his First Claim for excessive force by adding that "Defendant Talty intentionally and knowingly applied unnecessary, unreasonable, and excessive force to Plaintiff by applying and failing to loosen or remove handcuffs that were obviously too tight despite repeated pleas, protests, and expressions of pain and suffering."  [*Id.* at ¶ 43]; *see also* [*id.* at ¶¶ 48–49].

In the Motion to Amend, Mr. McCormack argues that good cause exists for the late amendment because, although the deadline to amend the pleadings has passed, "Plaintiff's amendment is based on new information learned in discovery in September 2021, and which has not been finalized in expert reports due to the need to save costs during settlement negotiations, which halted litigation in the case from October 2021 to February 2022."  [Doc. 68 at 8].  According to Plaintiff, the "new information" at issue is that "[u]ntil recently, Plaintiff was unaware that he had suffered additional injury from the secondary (tight handcuffing) source."  [Doc. 68 at 6–7].  Plaintiff claims that, upon his expert's review of the additional imaging that Defendant provided in August 2021, "Plaintiff's expert recommended that [he] undergo additional specialized imaging and that the previously undisclosed imaging and new imaging be reviewed by a radiological specialist for a more in-depth analysis."  [*Id.* at 7].  Following this testing, Plaintiff claims he learned about the "double crush syndrome" on or about September 3, 2021, [*id.*]; but not its cause, [Doc. 78 at 5].  Plaintiff argues that he nevertheless "acted promptly" in filing the instant Motion to Amend the First Amended Complaint following the Parties' unsuccessful attempts "to reach a resolution by the deadline of January 28, 2022 and knowing case litigation would be resumed."  [Doc. 68 at 8].  Therefore, Plaintiff continues, he "has acted diligently in seeking leave to modify the Scheduling Order to permit the proposed amendment."  [*Id.*].

Defendant disagrees that Plaintiff has established good cause under Rule 16(b)(4).  *See* [Doc. 74 at 7].  Defendant argues that Plaintiff's "overly-tight-handcuffing-theory should have been asserted following Plaintiff's deposition [in July 2021], or, at the latest,

in August [2021], following Dr. Moorer's expert report."  [*Id.*].[3]  Specifically, Defendant points out that Plaintiff testified that "he was cuffed painfully too tight" at his deposition in July 2021, and that such fact "was acknowledged and considered by Dr. Moorer in his August 2021 expert report"—wherein Dr. Moorer "diagnosed Plaintiff with a 'superficial radial nerve injury secondary to the July 4, 2018, wrist lock and subsequent handcuffing,' explaining that such injury 'is a common injury . . . if handcuffs are placed too tightly.'"  [*Id.* at 6]; *see also* [Doc. 68-1 at 2, 25].  Defendant claims, however, that Dr. Moorer did not "diagnose Plaintiff with 'a double crush syndrome' injury due to tight handcuffing" in his August 2021 expert report.  [Doc. 74 at 6]; *see also* [Doc. 68-1].  Thus, Defendant contends that, "[u]nder the pretenses of rebuttal expert disclosures, Plaintiff only now wishes to advance a completely new analysis of causation for Plaintiff's wrist injury based on a theory of overly tight handcuffs", which Defendant insists constitutes "an entirely new theory of recovery, not just 'modified theory of excessive force' as Plaintiff's counsel argues."  [Doc. 74 at 6].[4]  Defendant also contends that "Plaintiff's counsel's failure to obtain and provide imaging studies of diagnostic quality to Dr. Moorer or additional expert radiologist" does not constitute "new information learned through discovery" warranting an amendment.  [*Id.*].  Defendant further asserts that the proposed amendment represents a "moving target" approach to pleading that is condemned by the Tenth Circuit.  [*Id.*].

---

[3] Dr. Moorer is Plaintiff's expert.  *See* [Doc. 74 at 2; Doc. 78 at 1].

[4] In the Motion, Plaintiff asserts that he "is not adding any new claims or defendants that will require further discovery, only new facts about damages and the proximate cause of those damages that lend to an additional/*modified theory of excessive force*."  [Doc. 68 at 9 (emphasis added)].

In his Reply, Plaintiff claims he could not have "reasonably amended" the First Amended Complaint at the time of his deposition or when he disclosed his expert report, and it would have been impractical or imprudent to seek amendment "while the parties waited for a settlement conference and subsequent settlement discussions between September 2021 and February 2022." [Doc. 78 at 3–6].

This court finds that Plaintiff has not established sufficient good cause for the late amendment under Rule 16(b)(4).  In determining whether good cause exists for delay under Rule 16(b), the "question is when the [moving party] first learned of new information that it sought to include in its pleadings." *Fountain Valley Inv. Partners, LLC v. Cont'l W. Ins. Co.*, No. 14-cv-01906-MSK-NYW, 2015 WL 7770772, at *2 (D. Colo. Dec. 3, 2015). Significantly, here, injuries to Mr. McCormack's right wrist arising from his arrest by Defendant Talty—including the prolonged effects thereof—have been central to his claims since he filed the initial Complaint on July 6, 2020.  *See, e.g.*, [Doc. 1 at ¶ 2 ("Defendant . . . maliciously jerked his arm back, upward and then twisted it severely behind Plaintiff's back, in an effort to punish Plaintiff for his "attitude," until a bone broke, a ligament tore and a tendon was damaged in his wrist."); *id.* at ¶ 58 ("To this day, Plaintiff suffers from difficulty using his prominent hand due to pain and a lack of strength in his wrist, particularly when grabbing, holding items, or engaging in twisting motions."); *id.* at ¶ 68 ("Plaintiff is currently seeking medical treatment, and will require further treatment and likely surgery to fix the torn ligament, the improper healing of his wrist, and other associated disabilities he has suffered.")].  However, none of Plaintiff's allegations in the initial Complaint *or* the operative First Amended Complaint indicate that Plaintiff was tightly handcuffed at all, *see, e.g.*, [Doc. 1 at ¶ 32 (alleging only that Defendant Talty

"placed handcuffs on Plaintiff"; Doc. 11 at ¶ 32 (same)]—let alone that Plaintiff, as he now claims, "repeatedly complained to Defendant Talty over approximately ten minutes that the handcuffs were too tight and causing him pain and loss of feeling."  [Doc. 68-2 at ¶ 32]; *see also* [*id.* at ¶¶ 45–46].

Thus, although the Parties' arguments focus on whether Plaintiff could or should have asserted a tight handcuffing claim in July 2021 or August 2021, *see* [Doc. 74 at 7; Doc. 68 at 9–10], the court finds that Plaintiff could have included allegations to support such a claim when he filed the original Complaint in July 2020.  Indeed, the relevant facts to allege such a claim were available to Plaintiff at that time.[5]  To be sure, there is no dispute that at the time of his arrest in 2018—and, by extension, when he filed the original Complaint thereafter in July 2020—Plaintiff knew the following information, as alleged in the proposed Second Amended Complaint: (1) Defendant Talty applied "painful handcuffs . . . in an overly tight manner"; (2) Plaintiff "repeatedly complained to Defendant Talty over approximately ten minutes that the handcuffs were too tight and causing him pain and loss of feeling", which Defendant Talty "ignored . . . and failed to loosen or remove the overly tight handcuffs"; and (3) removing the handcuffs "was extraordinarily difficult for officers to complete because the handcuffs were so tight" given that "[t]he officer who removed them acknowledged the over-tightness of the handcuffs by recognizing and saying they were 'super tight.'"  [Doc. 68-2 at ¶¶ 31–35].

Plaintiff argues he could not have sought an amendment earlier because "a claim for tight handcuffing can only be made where there is a *non-de minimus* [sic] injury",  and

---

[5] In so stating, the court does not pass on the merits of an excessive force claim based on unduly tight handcuffing, especially because such claim is not presently asserted in this case.

Plaintiff previously "knew only that he experienced tight handcuffs and pain." [Doc. 78 at 3–4]; *see also* [Doc. 68 at 9–10]. For support, Plaintiff cites to *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007), which explains the elements of an unduly tight handcuffing claim. *See* [Doc. 68 at 9–10; Doc. 78 at 3–4]. However, *McCauley* does not address the relevant question here—that is, whether Mr. McCormack acted with diligence with respect to (a) when he first learned of the relevant information to assert a claim of excessive force based upon a theory of unduly tight handcuffing, and (b) when he moved to amend. *Cf. Fountain Valley*, 2015 WL 7770772, at *2 (where the plaintiff learned of information but "did not realize [its] significance" until discovery had progressed further, finding no good cause because the relevant question was "when the Plaintiff first learned of new information that it sought to include in its pleadings"); *Ward v. Acuity*, No. 21-cv-00765-CMA-NYW, 2021 WL 4947294, at *4 (D. Colo. Oct. 6, 2021), *report and recommendation adopted*, 2021 WL 5113580 (D. Colo. Nov. 3, 2021) (finding no good cause for delay in amendment where the plaintiff did not initially realize the relevance of certain information it had in its possession). While Mr. McCormack may not have known the precise mechanism of injury, i.e., "double crush" nerve injury, he certainly understood that Defendant Talty allegedly handcuffed him too tightly and that his wrists were severely injured—and yet he failed to plead any of those factual allegations for years after the initiation of this suit.

Finally, it does not appear that Defendant's expert report, or the information derived therefrom, impacted Plaintiff's ability to seek amendment, despite his arguments to the contrary. Plaintiff misplaces significant weight on the expert reports and his learning about the *additional* wrist injury (i.e., the "double crush" nerve injury) in 2021, arguing that

Defendants provided "imaging records that Plaintiff did not have, which suggested that the wrist injury [he] suffered *might be more complicated than originally determined*." [Doc. 68 at 2 (emphasis added)]. Plaintiff goes on to explain that

> [u]pon closer inspection, [Plaintiff's] expert [radiologist], in conjunction with the Plaintiff's original expert, determined that Plaintiff suffered additional injuries from the overly tight "hinge" handcuffs that had not previously been *recognized/appreciated*, including but not limited to a serious "double crush" nerve injury that will be expected to have long-lasting effects."

[*Id.* at 2–3 (emphasis added)].

However, Plaintiff appears to conflate the fact that he only recently learned about the *mode* of *one of* his wrist injuries—i.e., a "double crush" nerve injury purportedly caused be unduly tight handcuffing—with whether he could have previously *pled* facts in support of a tight handcuffing claim at all. As discussed above, allegations that Plaintiff has suffered, and continues to suffer, various injuries to his right wrist arising from his arrest have been central to Plaintiff's claims since the beginning of this case. *See, e.g.*, [Doc. 1 at ¶¶ 36–44, 56, 58]. Indeed, Paragraph 60 in the original Complaint and First Amended Complaint contain the same allegation: "Plaintiff is currently seeking medical treatment, and will require further treatment and likely surgery to fix the torn ligament, the improper healing of his wrist, *and other associated disabilities he has suffered*. [*Id.* at ¶ 60; Doc. 11 at ¶ 60 (emphasis added)]. Thus, that Plaintiff now claims he only recently became aware of yet *another* "associated disabilit[y] he has suffered"—i.e., a "double crush" nerve injury—despite his numerous other wrist impairments does not persuade this court that Plaintiff has acted diligently in seeking the instant amendment.

Moreover, there is no persuasive explanation as to why Mr. McCormack's own medical providers and/or expert witnesses could not have identified the double crush nerve injury, or why Mr. McCormack would not have specifically asked such providers if

any of his injuries could have resulted from the overly tight handcuffing.  "[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim.  It need only 'allege facts sufficient to state elements' of the claim." *Janes v. LeaderOne Fin. Corp.*, No. 11-2458-EFM, 2011 WL 6000838, at *1 (D. Kan. Nov. 30, 2011).  Absent any argument from Plaintiff otherwise, the court is not convinced that Defendant's expert report—which, in turn, was closely inspected by another expert radiologist retained by Plaintiff "*in conjunction with* the Plaintiff's original expert" to determine the extent of Plaintiff's wrist injuries, [Doc. 68 at 2–3 (emphasis added)]—was required for Plaintiff to sufficiently state his claim.[6]

In sum, Mr. McCormack has not provided an "adequate explanation for the delay" to include factual allegations known since July 6, 2018 or sufficient diligence on his part to determine all the potential theories of etiology of his severe wrist injury to establish good cause for modifying the Scheduling Order to allow the proposed amendment. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (finding that the Rule 16(b) standard was not met, where the defendant, as of the filing of the lawsuit, possessed "documents from which it could have discovered and asserted the defense"); *Laurienti v. Am. Alternative Ins. Corp.*, No. 19-cv-01725-DDD-KLM, 2019 WL 6837999, at *3–4 (D. Colo. Dec. 16, 2019) (denying a motion to amend under Rule 16(b), where the plaintiff submitted uncontroverted evidence that the defendant "knew the facts relevant to its collateral estoppel defense well before the deadline to amend pleadings"); *Medtronic*, 194

---

[6] Had Plaintiff included factual allegations with respect to the overly tight handcuffing in his original or First Amended Complaint, this court's analysis may have differed.

F.R.D. at 687 ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." (citation omitted)).

Because Mr. McCormack has failed to establish good cause for delay under Rule 16(b), "there is no need for the [c]ourt to move on to the second step of the analysis, i.e., whether [the movant] [has] satisfied the requirements of Rule 15(a)." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019) (changes in original) (citations omitted); *Gorsuch*, 771 F.3d at 1242 ("Having concluded [the movants] lacked good cause to amend their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.").[7]

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1)   Plaintiff's Motion to Amend Complaint [Doc. 68] be **DENIED**.[8]

---

[7] In any case, the court also finds that granting Plaintiff leave to amend under Rule 15 would be improper here.  Defendant argues that the Motion to Amend should be denied because (1) the Motion is unduly delayed; and (2) Defendant would be unduly prejudiced by Plaintiff's proposed amendment.  [Doc. 74 at 2–3].  Based on the court's conclusion above—that Plaintiff knew the pertinent facts on which his proposed amendments are based at the time he filed the original Complaint and that he has failed to establish why he could not have discovered the "double crush" nerve injury sooner—the court finds that Plaintiff's proposed amendments are unduly delayed under Rule 15(a).  *See Fed. Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").  The court also finds that the proposed amendments could pose a risk of undue prejudice to Defendant in that Defendant will likely need to seek further discovery regarding the mode of Plaintiff's "double crush" nerve injury, including whether such injury was indeed caused by Defendant Talty's tight handcuffing, as Plaintiff claims, or how to apportion such injury to other injuries caused by Defendant Talty or other sources.

[8] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583

DATED:  May 6, 2022                    BY THE COURT:

                                       _____
                                       Nina Y. Wang
                                       United States Magistrate Judge

_____

(10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).