IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 20-cv-01970-CMA-NRN

MICHAEL MCCORMACK,

    Plaintiff,

v.

VINCENT TALTY,

    Defendant.

## ORDER OVERRULING OBJECTIONS AND AFFIRMING ORDER

This matter is before the Court on Plaintiff's Objections (Doc. # 93) to former United States Magistrate Judge Nina Y. Wang's June 7, 2022, Discovery Order (the "Discovery Order," Doc. # 92). For the following reasons, the Objections are overruled and the Discovery Order is affirmed.

### I.     BACKGROUND

**A.    FACTUAL BACKGROUND**

This is an excessive-force case. Plaintiff, Michael McCormack, while on what he believed to be public property, was encountered by a BNSF railroad officer who informed him he was trespassing. (Doc. # 11, ¶ 2.) The BNSF officer radioed for assistance and Defendant, Denver Police Officer Vincent Talty, responded. (Doc. # 93 at 1.) Plaintiff claims Defendant jerked and twisted his arm during an arrest "until a bone in Plaintiff's right wrist broke, a ligament tore, and a tendon was damaged." (Doc. # 11,

¶ 62.) Defendant allegedly failed to document the incident and provided footage from his Body Worn Camera ("BWC") which only begins after force was applied and Plaintiff was in handcuffs. (Doc. # 93 at 2.) Plaintiff is now suing Defendant under 42 U.S.C. § 1983 for violating the Fourth Amendment prohibition on unreasonable seizures. (Doc. # 11.)

On February 7, 2022, Plaintiff served a Subpoena and Notice of 30(b)(6) on City and County of Denver ("Denver"), who is not a party to this action. (Doc. # 93-1.) Two designees for Denver were deposed on May 6, 2022. (Doc. # 93 at 4.) However, the Plaintiff and Denver dispute the scope of information on which Denver is required to provide testimony and documentation. As it relates to the objections currently before the Court, Denver objects to the following three requests from Plaintiff's 30(b)(6): (1) "All DPD . . . training, . . . in effect and/or provided to its officers (including specifically, the Defendant Officer Talty), as of the date of the incident, regarding use of body cameras during contacts with suspects and/or members of the public" ("Topic # 4"); (2) "All policies, guidelines, orders, agreements, or communications (whether written or otherwise) regarding the sharing or delineation of policing jurisdiction/authority between DPD (Denver) and BNSF (railroad) effective as of July 4, 2018" ("Topic # 8"); and (3) "Defendant Talty's employment history with the Denver Police Department, including . . . (d) history of allegations and/or review of misconduct . . .[and] (e) complete history of corrective action/discipline" ("Topic #10d-e," Doc. # 93-1 at 3-5).

Plaintiff argues that documentation and information on the above three topics are relevant and proportional to their case. Denver counters that the scope of the requested

information is "overly broad, unduly burdensome, and not proportional to the needs of the case." (Doc. # 94 at 5).

**B.    THE DISCOVERY ORDER**

On June 7, 2022, the magistrate judge held oral argument on the scope of the 30(b)(6) subpoena and issued the Discovery Order orally. (Doc. # 93-2.) As it relates to Topic 10d-e, the magistrate judge ordered that discovery be allowed on Defendant's misconduct and disciplinary history from 2012 to 2018 related to excessive force, use of force on a handcuffed/subdued individual, misuse of handcuffs, and improper use of fixed/hinged handcuffs. (Doc. # 93-2 at 26-28.) However, as it related to Topic # 4, Topic # 8, and the remaining disputed subtopics of Topic # 10d-e—failing to intervene in excessive force, failing to write a report, failing to activate a BWC, and departing from the truth—the magistrate judge determined that Plaintiff's discovery request is overly broad when considering the relevance to Plaintiff's claim and the burden on non-party Denver. (Doc. ## 92, 93-2 at 10-11, 17-18, 26.)

## II.    LEGAL STANDARDS

Under Rule 72(a) of the Federal Rules of Civil Procedure, a district court may reverse a magistrate judge's decision on a non-dispositive matter only if the decision is found to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous standard . . . requires that the reviewing court affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.,* 333 U.S.

3

364, 395 (1948)). "The contrary to law standard permits plenary review as to matters of law, but the Court will set aside a Magistrate Judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly." *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-3193-WJM-KMT, 2016 WL 6518254, at *1 (D. Colo. Nov. 3, 2016) (citations, internal quotations, and alterations omitted).

Plaintiff filed his objection on June 21, 2022 (Doc. # 93), and this matter is now ripe for review. (Doc. ## 94, 95.)

### III.   ANALYSIS

Plaintiff argues that the magistrate judge took too narrow a view of relevance as it relates to the disputed discovery topics. (Doc. # 93 at 5, 9, 11.) The scope of discovery is broad and "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). Pursuant to Fed.R.Civ.P. 26(b)(1), Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." When relevance is not apparent on the face of a party's discovery request, the party seeking the discovery has the burden to show the relevance by sufficiently demonstrating that the request appears reasonably calculated to lead to the discovery of admissible evidence." *Gomez*, 50 F.3d at 1520; *see also United States v. Wells*, 38 F.4th 1246, 1260 (explaining relevant evidence "need only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'").

However, "this desire to allow broad discovery is not without limits." *Gomez*, 50 F.3d at 1520. As such, relevance is not the only factor a court must consider when determining the scope of a discovery request. Federal Rule of Civil Procedure 26(b)(2)(C) requires a court to limit discovery on motion or on its own if it determines— amongst other things—that "the discovery sought is unreasonably cumulative or duplicative, or may be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In other words, discovery must be "proportional to the needs of the case." *Id.* at 26(b)(1).

With these principles and the deferential standard of review in mind, the Court affirms the magistrate judge's limitations on the scope of discovery for the following reasons.

### A. TOPIC # 4 – BWC TRAINING

Plaintiff argues information regarding the training Defendant and other officers received on BWCs is relevant to evaluating the reasonableness of force used as well as Defendant's credibility because it may suggest Defendant "purposefully avoided making a recording that could implicate him." (Doc. # 93 at 7.)

The magistrate judge concluded BWC training materials were only tangentially related to Plaintiff's claim. (Doc. # 95 at 11.) In making her decision to not compel testimony and documentation on BWC training, the magistrate judge noted that she was considering the requirements of proportionality and relevance. (Doc. # 95 at 9.) The Court agrees that the board discovery requested by Plaintiff—information on all BWC training provided to Denver police officers during a period when the devices were

5

recently acquired and deployed—would be overly broad and unduly burdensome considering the information's limited relevance. This is particularly true in light of the testimony and evidence Plaintiff already received from Denver on BWC policies, procedures, and guidelines. (Doc. ## 93-1 at 4.)

Although it is true that the Tenth Circuit has held the "reasonableness of an officer's actions must be assessed in light of the officer's training," *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008), Plaintiff's claim hinges not on the reasonableness of Defendant's alleged failure to properly employ his BWC, but rather on the reasonableness of Defendant's use of force—that is, the alleged act of jerking and twisting Plaintiff's arm during an arrest. (Doc. # 11, ¶ 62.) *See Scherbarth v. Woods*, No. 16-cv-2391-KHR, 2018 WL 851344, at *9 (D. Colo. Feb. 13, 2018) (permitting discovery on "police department's training of Defendants that relates to the conduct alleged in Plaintiff's claims"). Thus, the magistrate judge appropriately balanced the requirements of proportionality and relevance with Plaintiff's needs for information and her Discovery Order was not clearly erroneous or contrary to law on this basis. (Doc. #95 at 10); *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 569 (D. Colo. 2014) (noting that discovery must be bounded by principles of "proportionality, reasonableness, convenience, and common sense").

B.   TOPIC # 8 – BNSF & DENVER BOUNDARY

Plaintiff argues information regarding the BNSF property boundary and the resulting jurisdiction of the officers involved in the encounter is essential to evaluating what level of force was reasonable under the factors delineated in *Graham v. Connor*,

6

490 U.S. 388 (1989), because, if Plainitff was not actually trespassing, no crime was in progress. (Doc. # 93 at 8); *Id.* at 396 (listing "the severity of the crime at issue" as one factor bearing on the reasonableness of force under the Fourth Amendment.) Plaintiff also argues the boundary line has implications for the credibility of the officers involved because their knowledge of the boundary could demonstrate Defendant knowingly had no reasonable basis to detain Plaintiff. (Doc. # 93 at 8.)

The Court agrees with the magistrate judge that the potential relevance of the information sought by this topic of Plaintiff's 30(b)(6) is similarly disproportional to the needs of his case. Fed. R. Civ. Pro. 26(b)(1). Although Defendant's knowledge of the boundary line between Denver public space and BNSF's private property on the day he encountered Plaintiff may be relevant to the first *Graham* factor, the precise delineation of that line has minimal relevancy to the reasonableness of force used. *See Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (explaining that the reasonableness of force used must be "judged from [the] one-scene perspective" and not by means of "20/20 hindsight" (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)); *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000) ("officers are entitled to rely upon information relayed to them by other officers in determining whether there is . . . probable cause to arrest.").

Similarly, the exact location of the boundary has little bearing on whether a "reasonable officer on the scene" would have believed Plaintiff was trespassing at the moment the encounter occurred. *Graham*, 490 U.S. at 396. Plaintiff notes in his

Objection that he has already secured several other probative sources on this issue including the opinion of an expert consultant. (Doc. # 93 at 8.)

The same logic holds true when considering Plaintiff's explanation that the boundary line is important to discerning Defendant's credibility. (Doc. # 93 at 13.) The exact line, as opposed to Defendant's knowledge of the line, is likely to have little probative value in determining whether Defendant's belief that a crime was in progress on the day he arrested Plaintiff is credible. *Graham*, 490 U.S. at 396.

Therefore, considering the minimal relevance to Plaintiff's case and the burden on Denver in producing an expert to testify on the information sought in Topic # 8 of his 30(b)(6), the Court discerns no clear error or holding contrary to law in the magistrate judge's ruling that Denver would not be compelled to provide further testimony on the BNSF property boundary. (Doc. ## 92 at 2, 95 at 17-18.)

### C.  TOPIC #10D-E – MISCONDUCT & DISCIPLANRY HISTORY

Finally, Plaintiff argues disciplinary records and past allegations of misconduct against Defendant on the topics of failing to intervene in excessive force, failing to write a report, failing to activate a BWC, and departing from the truth, are relevant Defendant's credibility, and to his "knowledge, intent, lack of accident, cover-up, or punitive damages." (Doc. # 93 at 11.)

In narrowing the scope of Topic # 10d-e, the magistrate judge again noted that she was considering the requirements of proportionality and relevance. (Doc. # 95 at 26.) The Court acknowledges the potential relevance of past allegations of misconduct and disciplinary records to excess-force claims. *See, e.g.*, *Everitt v. Brezzel*, 750 F.

Supp. 1063, 1065-66 (Colo. 1990). However, the Court agrees that given the facts of this case and the single claim at issue, requiring Denver to supply a witness and documentation on Defendant's disciplinary and misconduct records that not directly related to excess-force and the use or misuse of handcuffs, would be overly broad and unduly burdensome. Fed. R. Civ. P. 26(b)(1). As such, the magistrate judge's narrowing of the types of employment history records to which Denver must comply with the 30(b)(6) was not clearly erroneous or contrary to law.

### IV.   CONCLUSION

Having reviewed the magistrate judge's Discovery Order (Doc. ## 92, 95) and Plaintiff's Objections (Doc. # 93), the relevant briefing and portions of the record, and applicable authority, the Court is satisfied that the Discovery Order is not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court therefore overrules Plaintiff's objections and affirms the magistrate judge's ruling. *See Ariza v. U.S. W. Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).

For the foregoing reasons, the Court ORDERS that Plaintiff's Objections (Doc. # 93) are OVERRULED, and the Discovery Order (Doc. # 92) is AFFIRMED.

DATED:  October 25, 2022

BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
Senior United States District Judge